[MEM. — This case was prepared for publication with the Oxford cases argued in 1846, but was accidentally mislaid.]

## MARY CHASE & al. Ex'ors, versus JOHN BRADLEY & al. and ISRAEL B. BRADLEY, as Trustee.

Executors by the common law, are authorized to discharge or release at pleasure, choses in action of their testator, although such release may in certain cases be evidence of assets in their hands.

The Rev. Stat. (c. 106, § 33,) which provides, that an executor or administrator may compound with and discharge a debtor, unable to pay all his debts, with the approbation of the Judge of Probate, on receiving a fair proportion of the debt, does not restrict the power of executors and administrators. It merely affords them protection against being called upon to account for more than they have received, when they have acted with the approbation of the Judge of Probate.

In giving a construction to an instrument in writing, the intention of the parties, to be collected from the whole instrument, is to be carried into effect, although a literal construction of a single clause, considered without reference to the others, would lead to a different result.

When a levy is made upon land previously attached, the estate is appraised at its value at the time of the levy, and the statute purchaser pays no more for it, although the title acquired has relation to the time of the attachment.

If a debtor, after an attachment, and before the levy of the execution thereon, makes a conveyance of the land, bona fide, and for a valuable consideration; and after such conveyance and before the levy, a third person cuts timber trees, as a trespasser upon the land, and converts the same to his own use, and settles therefor with the grantee of the land, and pays him

the value of the timber; the grantee does not thereby become chargeable as the trustee of the debtor, in a process commenced by the creditor, after the levy, wherein the grantee is summoned as the trustee of the debtor.

THIS was an action of debt on two several judgments in favor of Stephen Chase, deceased, of whose estate the plaintiffs are executors, against the principal defendants.

The parties agreed upon a statement of facts, which facts sufficiently appear in the opinion of the Court.

The parties agreed, that the Court should render such judgment on the facts, as the law should require.

The release was in the following terms : —

" Whereas Stephen Chase, Esq. late of Fryeburg, deceased, did at the term of the Supreme Judicial Court, begun and holden at Portland, in and for the county of Cumberland, on the second Tuesday of November, 1836, recover judgment against John Bradley and Isaiah Warren, for the sum of three thousand and thirty-one dollars and sixty-seven cents, damage, and costs of Court, taxed at ten dollars and seventy cents, on which said judgment three executions have issued and on one of which the said John Bradley now stands committed to the jail in the county of Cumberland : — And whereas the said Stephen Chase did at the Supreme Judicial Court, holden at Paris, in and for the county of Oxford, on the third Tuesday of May, 1839, recover judgment against the said Bradley and Warren for the sum of five thousand seven hundred and sixty-five dollars and fifty-six cents debt, and seventeen dollars and twenty-seven cents cost, on which said judgment several executions have issued, and on which is remaining unsatisfied of the principal about fourteen hundred dollars. — And whereas the said Stephen Chase did at the Supreme Judicial Court, begun and holden at Paris, in and for the county of Oxford, on the second Tuesday of October, 1844, recover judgment against the said Bradley and Warren, for the sum of nineteen hundred and thirty-eight dollars and eight cents debt, and fifty-seven dollars and fifty cents cost of suit; and at the same term of said Court, another judgment against said Bradley and Warren for the sum of seven thousand and eight hundred

and eighty-eight dollars and forty-one cents debt, and fifty dollars and ninty-seven cents cost of suit. And at the same term of said Court another judgment against the said Bradley and Warren for the sum of thirteen thousand, nine hundred and fifty-nine dollars and twenty cents debt, and twenty-six dollars and thirty-eight cents cost; — and which said judgments are satisfied only in part: —

" Now know all men by these presents, that we, Mary Chase, widow, and Stephen Henry Chase, Esquire, of Frye-burg, Executors of the last will and testament of the said Stephen Chase, Esquire, deceased, and which will has been duly proved, approved and allowed, in consideration of the sum of five thousand dollars to us in our said capacity as Executors aforesaid, well and truly paid by the aforesaid Isaiah Warren, the receipt whereof, we, in our said capacity, do hereby acknowledge, have remised, released and discharged, and do hereby remise, release and forever discharge for ourselves, and in our said capacity of executors, our successor or successors in the administration of said estate, and for the due execution of said will and of the trust on us or them imposed, the said Isaiah Warren, his heirs, executors and administrators, from the payment of one moiety or half part of the aggregate sums due on the before recited judgments, executions and demands, hereby acknowledging to have received of the said Isaiah full satisfaction of said moiety, or half part of said judgments, executions and demands before recited; and this discharge or release to the said Isaiah is not to be applied to any one particular judgment, suit or process, existing, pending or that may be further prosecuted or hereafter commenced, and this instrument is not to be considered as, or have the effect of a release or discharge of any existing judgments or executions so long as the other moiety or half part of the debt due from said Bradley and Warren, not provided for herein, remains due and unpaid, except for the purpose of exempting the said Isaiah and his personal property, from any liability for the debt of said Bradley and Warren as hereinafter set forth, and this instrument is not to be pleaded or used by said Bradley and Warren, or either of them, as a defence to any suits

that are or may hereafter be instituted against said Bradley and Warren, so long as the other moiety or half part of the debt due from said Bradley and Warren remains unpaid, not provided for herein. And this instrument is not to enure to the benefit of John Bradley, to discharge him the said Bradley, his person or property, from liability, or as a bar or defence to any legal suit or process till the other moiety or half part of the debt not herein provided for is paid; reserving to us in our said capacity of executors the right to demand, receive and enforce the payment of the remaining half part of the same, from and out of the goods, chattels, or lands of the said John Bradley, and to enforce payment thereof against the body of the said John Bradley according to law, and subject to the covenants and agreements by us in our said capacity of executors made as hereinafter set forth, and in consideration of the aforesaid five thousand dollars, paid as aforesaid, do in our capacity aforesaid hereby remise, release, and forever quitclaim to the said Isaiah Warren, his heirs and assigns, one half in common and undivided of two lots of land in said Fryeburg, the one called the Mount Tom lot, and the other called the Dark Brook lot, and also the whole of two lots of land in the town of Denmark, in said county of Oxford, the one called the Bay lot and the other Mast Swamp lot, and the same which were levied upon by virtue of one of the executions issued on one of the judgments before mentioned, and all right title and interest acquired by said estate by virtue of said levy, to said half part of the two first mentioned lots, and the whole of said two last mentioned lots, he, said Warren, having redeemed the aforesaid premises by payment to our full satisfaction.

" And in consideration of the five thousand dollars aforesaid, in our capacity aforesaid, we do covenant and agree with the said Warren, his heirs, executors and administrators, that we will not, and our successors in the settlement of said estate, and in the execution of said will, shall not, satisfy any of the half part, remaining due on said judgments and executions, out of the goods and chattels of the said Isaiah, or in the hands of his executors or administrators, or out of the lands of the said Warren, as may appear by the record, when said

judgments may be enforced or executions levied; nor levy any executions issued or that may at any time hereafter be issued, upon any of said judgments or upon any judgments that may hereafter be recovered thereon, or cause it to be done upon or out of any of the money, goods and chattels of the said Isaiah, or of the lands of the said Isaiah, as may have so appeared by the records and, *bona fide*, been the property of the said Isaiah previous to the time that any attachments have been made on said lands in suits on said judgments; nor cause the body of said Warren ever to be arrested on any execution or executions, issued or that may hereafter issue on said judgments, or cause him, the said Warren, at any time to be committed or held in duress thereon ; we, the said Mary and Stephen Henry Chase, in our said capacity of executors and in behalf of said estate, reserving to ourselves all liens by attachment or any right to the same, on the property of said John Bradley, to the extent and no more, of one half part of the aforesaid judgments, executions and demands, and all right to prosecute to final judgment any suits now pending or hereafter brought, and for such purpose alone to use the name of said Warren as principal defendant, in any process, and to satisfy the same out of the property of the said Bradley alone, subject to the exceptions herein before stated, to the amount of one half part of said judgments, executions and demands now remaining unsatisfied and no more ; also reserving all right to any levys heretofore made on the property of said Bradley and Warren, same as hereinbefore excepted, and also reserving all rights acquired, or that may hereafter be perfected, against all persons declared against as trustees in any trustee process now commenced.

" In witness whereof, we, the said Mary Chase and the said Stephen Henry Chase have hereunto set our hands and seals, this twenty-first day of December, in the year of our Lord, 1844. " Mary Chase, [L. s.]

" Signed, sealed and " S. Henry Chase. [L. s.] delivered in presence of,

" Edward L. Osgood."

Israel B. Bradley was summoned as trustee of the principal defendants, and made his disclosure, the substance of which is stated in the opinion of the Court.

The arguments were in writing, by

*Chase*, for the plaintiffs, — and by

*Fessenden*, *Deblois* and *Fessenden*, for the defendants and trustee, but are too extended for publication.

For the *plaintiffs*, it was contended, that the paper signed by the executors in favor of Warren, was executed by them, as such, without legal authority, and therefore could not be of any avail against the estate they represented. By Rev. Stat. c. 106, § 33, the executors are authorized to " compound with a debtor and give him a discharge" " with the approbation of the Judge of Probate." Here was no such approbation, and the stipulations contained in it may bind them personally, but cannot affect the estate. The executors cannot bind the estate in a manner that the law prohibits.

But if it can be considered, that the executors had authority to make the instrument, it cannot operate as a discharge of any judgment or demand, or of any part thereof. The whole instrument is to be taken together, to ascertain the proper construction to be given to it. The whole instrument was here examined, and it was said, that it was to have no effect as a release or discharge until Bradley had paid what was due from him ; by it the right is reserved to commence and prosecute any suits against Bradley and Warren ; it is not to be applied in any suit or process pending, or to be commenced ; and it is not to be pleaded or used as a defence to any suit instituted, or to be instituted, against Bradley and Warren. The judgments are to be rendered for the whole amount, and Warren is to be protected only by the covenants. If the judgments are to be rendered for but one half the amount, still Warren must resort to his covenants, should the execution for the half be levied upon his property, and that would be his only remedy. This, therefore, was the only remedy provided, and no part was intended to be released, until Bradley's half was paid.

He also contended, that the trustee should be charged. The general grounds of argument to charge the trustee, appear in the opinion of the Court.

For the *defendants*, it was contended, that the instrument was a release and discharge, and conclusive evidence of the payment of one half of the demands mentioned therein, reserving to the executors the right to maintain, against Bradley and Warren, joint actions to recover joint judgments for one half, with a covenant not to satisfy any such judgment out of the property of Warren, or to molest his person. They cited 2 Salk. 574 ; 2 Co. Lit. 232 *(a)*, § 376 ; Hobart, 70 ; *Bradley* v. *Boynton*, 22 Maine R. 287 ; 5 Dane, c. 166, art. 3 ; 2 Saund. 48 *(a)* ; Willes, 108 ; *Walker* v. *McCulloch*, 4 Greenl. 426 ; *Tuckerman* v. *Newhall*, 17 Mass. R. 581 ; *Ward* v. *Johnson*, 13 Mass. R. 148 ; 22 Pick. 3C8 ; 2 Johns. R. 448 ; 7 Johns. R. 209 ; 9 Wend. 336 ; 1 Bos. & P. 630 ; 4 Wend. 607. The authorities go to the extent, that the release to Warren, would operate as a release to Bradley also. 2 Johns. R. 448 ; 18 Pick. 415 ; 4 Greenl. 421.

In contending that there was no ground for charging the trustee, the following authorities were cited. *Hastings* v. *Baldwin*, 17 Mass. R. 556 ; *Whitman* v. *Hunt*, 4 Mass. R. 272 ; *Hatch* v. *Smith*, 5 Mass. R. 49 ; *Cleaveland* v. *Clap*, 5 Mass. R. 201 ; *Hawes* v. *Langton*, 8 Pick. 67 ; *U. States* v. *Langton*, 5 Mason, 280 ; *Rundlett* v. *Jordan*, 3 Greenl. 49 ; *Chase* v. *Bradley*, 17 Maine R. 89 ; *Lamb* v. *Franklin Man'g Co.* 18 Maine R. 187 ; *Bissell* v. *Strong*, 9 Pick. 564 ; *Guild* v. *Holbrook*, 11 Pick. 101 ; *Sanford* v. *Bliss*, 12 Pick. 116 ; *Ripley* v. *Severance*, 6 Pick. 474 ; 7 Mass. R. 438 ; 2 Mass. R. 503 ; 16 Mass. R. 62 ; 19 Maine R. 42 ; 12 Pick. 383 ; 2 Metc. 376 ; 3 Metc. 297.

The opinion of the Court was drawn up by

SHEPLEY J. — The validity and effect of a sealed instrument, executed by the plaintiffs and delivered to the defendant, Warren, on December 21, 1844, is to be considered.

The defendants contend, that it is a release of one moiety of two judgments declared on in this action. The plaintiffs insist, that it is invalid, because they, as executors, had no legal right to compound and discharge debts due to their testator without the approbation of the Judge of Probate. And that if valid, it cannot operate to discharge the defendants, in such a manner as to prevent the recovery of the whole amount due by those judgments.

Executors by the common law are authorized to discharge or release at pleasure choses in action of their testator, although such release may in certain cases be evidence of assets in their hands. *Brightman* v. *Keighly,* Cro. Eliz. 43. The statute, c. 106, § 33, which provides, that an executor or administrator may compound with and discharge a debtor, unable to pay all his debts, with the approbation of the Judge of Probate, on receiving a fair proportion of the debt, does not restrict the powers of executors and administrators. It affords them protection against being called upon to account for more than they have received, when they have acted with the approbation of the Judge of Probate. The objection to the validity of the instrument cannot prevail.

It contains these words of release to the defendant, Warren, used by the plaintiffs in their capacity as executors. Have remised, released and discharged, and do hereby remise, re lease and forever discharge the said Warren, his heirs, executors and administrators from the payment of one moiety or half part of the aggregate sums due on the before recited judgments, executions and demands, hereby acknowledging to have received of the said Isaiah full satisfaction of said moiety or half part of said judgments, executions and demands, before recited.

The plaintiffs do not contend, that this language will not legally operate to discharge both the defendants from the payment of one moiety of the judgments, unless it is controlled by other language subsequently used, and found in the instrument immediately following that already quoted ; and it is : —

" this discharge and release to the said Isaiah is not to be applied to any one particular judgment, suit or process, existing, pending, or that may be further prosecuted, or hereafter commenced ; and this instrument is not to be considered as, or to have the effect of, a release or discharge of any existing judgments or executions, so long as the other moiety or half part of the debt due from said Bradley and Warren, not provided for herein, remains due and unpaid ; except for the purpose of exempting the said Isaiah, his person and property, from any liability for the debt of said Bradley and Warren as hereinafter set forth ; and this instrument is not to be pleaded or used by said Bradley and Warren, or either of them, as a defence to any suits, that are, or may hereafter be, instituted against said Bradley and Warren, so long as the other moiety or half part of the debt due from said Bradley and Warren remains unpaid not provided for herein."

It is apparent, that the instrument was drawn most carefully to guard against the loss of the other moiety and against any injury to their attachments and remedies to recover it from Bradley. This may account for the introduction of clauses or phrases which might not be necessary for such a purpose, but were rather used *majora cautela.* There are obviously three distinct clauses in that part of the instrument last quoted.

The purpose and effect of the first clearly was to declare, that by the discharge of one " half part of the aggregate sums due" no " one particular judgment, suit, or process, existing, pending" or to be commenced, should be discharged. The intention appears to have been to prevent the large amount discharged from being applied to discharge any one judgment or suit pending or to be commenced.

The intention of the second clause, so far as it could operate favorably for the plaintiffs, appears to have been to prevent any existing judgments or executions, on which no suits had been commenced, from being discharged, so long as the other moiety due from Bradley should remain unpaid. The intention exhibited in these two clauses is not in conflict with the

operation of the release to discharge one moiety of each judgment or demand.

A literal construction of the third clause would perhaps prevent the instrument from being used " as a defence to any suits" pending or to be commenced, so long as the other moiety should remain unpaid.

Was it the intention of the parties to be collected from the whole instrument, that the entire debt should remain due from Bradley, the release of one moiety to Warren notwithstanding, so that the plaintiffs might collect the whole of Bradley, if he did not voluntarily pay his own moiety and thereby obtain a discharge of the whole ?  If so, it might be important to prevent the release from operating as a discharge of one moiety of each judgment, that Bradley might be induced to pay his own moiety to free himself from liability to pay the whole amount.  If in no event more than a moiety could be collected of him, there would not appear to be any more sufficient motive for the introduction of that clause, than to secure to the plaintiffs the right to commence, maintain and prosecute to final judgment a suit upon each of the judgments for the recovery of the moiety due from Bradley.  In such case it would seem to be to little or no purpose to provide for a recovery of the whole amount due by the judgments against both defendants, when one moiety only could in any event be collected of Bradley.  It would be more reasonable to conclude, that the words " defence to" were used instead of, or in the same sense, as the words " discharge of " in the *preceding* clause, than to infer, that they were designedly used for a useless purpose.  The effect of the clause would then be to provide, that the instrument should not be pleaded or used in discharge of any suit, unless the other moiety was first paid. This construction will leave the instrument to operate harmoniously in all its parts.  That it was not the intention, that more than one moiety should in any event be collected of Bradley, is quite certain.  The latter part of the instrument contains this clause :—

" Reserving to ourselves all liens by attachment, or any

right to the same, on the property of said John Bradley, to the extent, and no more, of one half part of the aforesaid judgments, executions and demands; and all right to prosecute to final judgment any suits now pending or hereafter brought, and for such purpose alone to use the name of said Warren, as principal defendant in any process, and to satisfy the same out of the property of said Bradley alone, subject to the exceptions herein before stated, to the amount of one half part of said judgments, executions and demands now remaining unsatisfied and no more." It cannot with propriety be contended, that it was the intention to effect a valuable purpose in preserving to the plaintiffs the right to recover in each suit the whole amount; that they might thereby obtain the whole of some one or more of the judgments from the property of Bradley, which had been attached, while they would not collect of him more than a moiety of the whole amount due; for this last clause provides for the preservation of the liens on his property by attachment, " to the extent, and no more, of one half part of the aforesaid judgments." It is apparent, that the two latter clauses relied upon by the plaintiffs, provide by implication, that one moiety would be discharged by the release, by the provision, that the judgments shall not be discharged, so long as the other moiety remains unpaid. In the last clause quoted, the plaintiffs reserve to themselves the right to use the name of Warren as a defendant, in process for the purpose alone of obtaining satisfaction from Bradley of one moiety and no more.

While any other construction, would make some of the phrases or clauses repugnant to others, this construction will have no such effect, and will at the same time preserve to all every valuable right secured to them by the instrument.

The plaintiffs are entitled to judgment for one moiety of the amount due upon the two judgments at the time, when the instrument was executed, disregarding the indorsements made on executions issued upon them by officers from the sales of personal property, the title to which failed to be in the debtor,

with legal interest on the moiety not released to the time of judgment.

Another question presented for consideration is, whether the person summoned as a trustee is chargeable on his disclosure.

The testator caused certain land of John Bradley to be attached upon a writ; obtained judgment in that suit, and caused an execution issued thereon to be levied upon the estate attached. After the attachment and before the levy, John Bradley conveyed the lands to the trustee. During that time, one King cut timber trees as a trespasser upon those lands, and converted them to his own use; and settled therefor with the trustee, and paid him more than three thousand dollars.

The plaintiffs, among other things insisted on, contend, that the property thus taken from the lands, should have been applied to satisfy the debt, the estate proving to be insufficient without it; that the statute, c. 114, § 30, provides that real estate attached should be "held as security" to satisfy the judgment. That to withdraw a part of it in any manner, and prevent its appropriation to that purpose is a fraud upon the law. That the person, in whose possession any proceeds from such lands converted into money are found, may be required by the trustee process to pay it over to the creditor. That in this case, especially, should the trustee be held to account to the plaintiffs, because they made application to the Court, according to the provisions of the statute, c. 119, § 14, for a writ of injunction to stay waste upon the lands, which application was withdrawn upon an agreement made between the counsel of the creditor and the debtors, that a receiver should be appointed to receive the proceeds and hold them for those, who might be legally entitled to them; and that these proceedings were communicated to the trustee.

The disclosure states, that the trustee purchased the lands, bona fide and for a valuable consideration, without notice of the attachment. When a levy is made the estate is appraised at its value at that time, and the statute purchaser pays no more for it, although the title acquired has relation to the time

Chase v. Bradley.

of the attachment. If the creditor might have prevented the waste by obtaining a writ of injunction against it, and have obtained by a levy at a higher value, satisfaction of his execution to a greater amount, he did not do so, but appears to have relied upon an arrangement, which may prove to be illusory. If it could be admitted, that the provision of the statute, which requires, that the estate shall be held as security to satisfy the judgment, would prevent the purchaser from acquiring a legal title to the proceeds of timber trees, limestone, or other material derived from the estate attached, it would seem to follow, that those proceeds might belong to the attaching creditor after the levy had been made. And yet he would not appear to have paid for them, because he would have purchased at the appraised value after such proceeds had been obtained from it. If they became the property of the attaching creditor, they could not be goods and effects of his debtor in the hands of a trustee to be reclaimed by this process. The creditor must bring his action for money had and received to his use against the receiver of them, if he would obtain them. The law permits a debtor to convey his estate under attachment, and the purchaser to acquire a good title against all other rights, than those secured by the attachment. Any such proceeds of property obtained from the estate after such a conveyance, made *bona fide* and for a valuable consideration, cannot be the property of the debtor and grantor, or goods and effects of his in the hands of the purchaser. If it be admitted to be a fraud upon the law to cut and carry away timber trees from the land attached, it is not perceived how the debtor, who had thus conveyed the lands subsequent to the attachment, could, by the purchaser's committing a fraud upon another, acquire property to the proceeds derived from them. The conveyance by the debtor cannot be considered fraudulent and void by events happening after it was made, and for the purpose of converting the proceeds of timber trees, thus cut and carried off, into goods and effects of the debtor, and at the same time a *bona fide* conveyance to pass a good title to the estate, which carried with it the property in those

timber trees then growing upon it. It is not contended, that it can, upon the answers of the trustees, be considered as wholly fraudulent and void as to creditors. .

As it respects the proceedings on the application for an injunction, they can have no operation upon the legal title to the proceeds of the timber trees, whether communicated to the trustee or not, unless he authorized some one 'to act for him, or subsequently assented to them ; and this is distinctly denied in the disclosure.

In whatever aspect the case is presented and examined, the trustee does not appear to hold any goods or effects of the principal debtors in his hands.

*Trustee discharged.*